UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LOLITA B. BURGESS, <br> (Social Security No. XXX-XX-6203), <br> <br> Plaintiff, <br> <br> v. <br> <br> MICHAEL J. ASTRUE, <br> Commissioner of the <br> Social Security Administration, <br> <br> Defendant. | 4:12-cv-26-WGH-TWP |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 8, 10) and an Order of Reference entered by District Judge Tanya Walton Pratt on April 26, 2012 (Docket No. 13).

**I. Statement of the Case**

Plaintiff, Lolita B. Burgess, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits (ADIB@) under the Social Security Act (Athe Act@). 42 U.S.C. '' 416(i), 423(d); 20 C.F.R. ' 404.1520(f). This court has jurisdiction over this action pursuant to 42 U.S.C. ' 405(g).

Plaintiff filed an application for DIB effective April 21, 2008, alleging that she became disabled on August 31, 2007 (R. 163), due to various physical impairments including chronic bronchitis, fibromyalgia, rheumatoid arthritis, hepatitis, chronic sinus infections, tuberculosis, and back problems. (R. 199). Her applications were denied initially and upon reconsideration. (R. 67-68, 77-80, 84-90). On March 30, 2010, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Samuel A. Rodner. (R. 23-66.)

On September 20, 2010, the ALJ issued a decision finding Plaintiff not disabled. (R. 10-17). Although the ALJ found that Plaintiff had severe physical impairments (R. 12-13), he concluded that Plaintiff retained the residual functional capacity ("RFC") to do a range of sedentary work and could perform her past relevant work. (R. 13-17). On January 10, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-3), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. ' 404.981. Plaintiff timely filed this civil action for review of the Agency's decision.

## II. Statement of the Facts

The court adopts the Statement of Facts found in the Defendant's Memorandum in Support of Commissioner's Decision filed June 20, 2012. (Docket No. 16). This is because the Plaintiff does not list additional facts in her Brief in Support of Complaint filed May 23, 2012 (Docket No. 15), nor does she

significantly contest the factual statement found in the Commissioner's Memorandum in Plaintiff's Reply Brief filed June 27, 2012 (Docket No. 17).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of

3

a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.@ 42 U.S.C. ' 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. ' 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his/her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## V. The ALJ=s Decision

The ALJ's decision included the following findings of fact and conclusions of law: (1) Plaintiff was insured for DIB through December 31, 2009 (R. 12); (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (*id.*); (3) in accordance with 20 C.F.R. ' 404.1520, Plaintiff had five impairments that are classified as severe: affective disorder; anxiety-related disorder; arthritis; osteoarthritis; and fibromyalgia (R. 12-13); (4) these

impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 13); (5) Plaintiff=s allegations regarding the extent of his limitations were not fully credible (R. 14); (6) Consequently, the ALJ concluded that Plaintiff retained the following RFC: lift and/or carry up to ten pounds occasionally and less than ten pounds frequently; sitting for up to six hours in an eight-hour workday; standing or walking about two hours in an eight-hour workday; occasional stooping, kneeling, crouching, and climbing of ramps or stairs; no crawling or climbing ladders, ropes or scaffolds; no concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, and poorly ventilated areas; and the ability to work in environments with unlimited exposure to wetness, noise, vibration, and hazards (R. 13-16); and (7) Plaintiff could perform past relevant work as a secretary (R. 16).

## VI. Issues

Plaintiff has essentially raised four issues. The issues are as follows:

1. Did the ALJ err when he concluded that Plaintiff=s work as a Asecretary@ was past relevant work?

2. Does the fact that a significant part of the hearing transcript is described as A[INAUDIBLE]@ require remand for further consideration?

3. Is the ALJ=s credibility determination proper?

4. Did the ALJ fail to give appropriate or controlling weight to the opinions

of the Plaintiff=s treating physicians?

### Issue 1: Did the ALJ err when he concluded that Plaintiff=s work as a Asecretary@ was past relevant work?

The ALJ found that Plaintiff was capable of performing her past relevant work as a Asecretary.@ (R. 16). Plaintiff first argues that she did not perform the job sufficiently long enough for it to constitute past relevant work. Specifically, she argues that the job of Asecretary@ (DOT #201.362-030) Ahas a specific vocational preparation level of 6.@ (Plaintiff=s Reply 2). According to Plaintiff, Appendix C of the DOT regulations suggests that such a job requires a learning time of over one year and up to two years. However, substantial evidence does support the ALJ=s finding that Plaintiff performed her past relevant work as a Asecretary@ from March 2006 to August 2007, which would be greater than one year and less than two years. Specifically, Plaintiff described her work at Exhibit B7E-1. (R. 16, 229). The ALJ also pointed to Exhibit B2E as consistent with her performance of those duties without the need to engage in cleaning activities. (R. 16) The ALJ also noted that Plaintiff performed this position above substantial gainful activity levels, referencing Exhibit B4D. (R. 16). This exhibit establishes that Plaintiff earned 12 consecutive quarters of coverage based on earnings from the same employer, suggesting that she may have worked at this position over two years. Although Plaintiff described her position differently at the hearing, the ALJ does articulate with clarity in his opinion the evidence upon which he based his determination that the prior work activity as a Asecretary@

was past relevant work. (R. 16). There is no error in this aspect of the decision.

**Issue 2:   Does the fact that a significant part of the hearing transcript is described as A[INAUDIBLE]@ require remand for further consideration?**

In her Brief in Support of Complaint, Plaintiff argues that Athe vocational evidence in this case is unclear and does not give counsel or presumably the reviewing court a sufficient record to review. In four pages of vocational testimony (TR 59-62), there are at least 30 parts of the testimony that are [INAUDIBLE], making it nearly impossible for a reviewing court to analyze the vocational evidence.@ (Plaintiff's Brief 5).

In responding to this argument, Defendant argues that the gaps in the hearing transcript do not support remand because the vocational expert=s testimony was unnecessary to the ALJ=s finding at step 4. (Defendant's Memorandum 15). Defendant further argues that the decision to use a vocational expert is at the discretion of an ALJ and points to the fact that the determination of whether a claimant can perform his/her past relevant work need not be supported by vocational testimony. (Defendant's Memorandum 16 (*citing* 20 C.F.R. ' 404.1560(b)(2); *Wright-Hines v. Comm'r of Social Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996); SSR 00-4(p) (2000)).

In her Reply Brief, Plaintiff points to the material portions of the hearing transcript that shows gaps on the "ultimate determinative issue" of whether she was capable of performing past relevant work. (Docket No. 17, pp. 1-2). This

court's review of the appropriate portions of the transcript (R. 59-63) supports the Plaintiff's position that generally this record is insufficient to allow the court to review many portions of the vocational expert's testimony. However, the critical issue in this case is whether the ALJ's determination that Plaintiff could perform her past relevant work as a secretary is supported by substantial evidence. *Richardson*, 402 U.S. at 401. The portion of the administrative hearing most critical to that issue is decipherable. The ALJ and the vocational expert were able to establish that the secretarial job as it is "normally done" (R. 59) is done as a sedentary and skilled position (R. 60). Later in the testimony, the ALJ and vocational expert seem to agree that if Plaintiff performed the job "as the claimant described the job" (R. 61), Plaintiff would not have been performing secretarial duties, and that job would have been classified as a "cleaner" (R. 62).

As we discussed in issue one above, there was substantial evidence to support the ALJ's finding that the duties which Plaintiff actually performed fit within the category of "secretarial" duties. In making such a finding, the ALJ did determine that Plaintiff's description of her job duties was not entirely credible at the hearing (R. 16), and he relied upon her description of the duties in other parts of the record (R. 16, 183-84, 198-206). Because there is substantial evidence to support the ALJ's determination that the Plaintiff's prior work involved secretarial duties but not those of a cleaner, there is no need to consider the vocational expert's testimony with respect to Plaintiff's ability to perform a prior job of a "cleaner." Therefore, although the portions of the

transcript which are inaudible do make review difficult, this court concludes that those portions are not ultimately material to the decision made by the ALJ. There is, therefore, no error in the record requiring reversal because of the inaudibility of portions of the vocational expert=s testimony.

**Issue 3: Is the ALJ=s credibility determination proper?**

The ALJ=s credibility determination included the following sentence:

After careful consideration of the evidence, the undersigned finds that the claimant=s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant=s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (Tr. 14.)

Both parties recognize that the use of this sentence has been criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 644 (7th Cir. 2012), and *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). This court does agree with Defendant that the use of this sentence does not render the opinion *per se* improper so long as the ALJ supports that decision by a more specific explanation of why Plaintiff was not entirely credible. *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011). So long as the ALJ explains rationally his or her credibility finding, that finding will not be disturbed unless it is Apatently wrong.@ *Simila v. Astrue*, 673 F.3d 503, 517 (7th Cir. 2009).

In this case, the ALJ set out the appropriate two-step test for evaluating pain and other symptoms. (R. 14). Specifically, the ALJ found that Plaintiff=s testimony was inconsistent with certain objective evidence with respect to her

9

rheumatoid arthritis. Specifically, he referenced Dr. Moshan Ehsan, who found Plaintiff to have only "minimal to mild signs of an inflammatory disease in her shoulders, hips, and metacarpal phalangeal joints" and an otherwise normal exam. (R. 14 (citing R. 326-327)). The ALJ also referenced the fact that Exhibit B11F/3 includes statements by Dr. Ehsan finding only mild swelling in the left hand, no clinical signs of inflammation, and a completely normal X-ray with no soft tissue abnormalities. (R. 14-15 (citing R. 385)). The ALJ in this case did discuss Dr. Rickey Kinzey, but found that Dr. Kinzey=s treatment did not document any trigger points for his diagnosis for fibromyalgia and that Dr. Kinzey=s physical examination of Plaintiff has been essentially normal since January 7, 2009. (R. 15). The ALJ discussed information that was Ain the claimant=s favor@ but relied upon the fact that the objective evidence was consistent with mild impairments. (R. 15). While this court could disagree with the ALJ=s credibility assessment in this case, we do not find it to be patently wrong and, therefore, do not find error with respect to this portion of the opinion.

**Issue 4:      Did the ALJ fail to give appropriate or controlling weight to the opinions of the Plaintiff=s treating physicians?**

Plaintiff in essence argues that the ALJ failed to give the Asubstantial deference@ to the treating physicians= medical opinions required under 20 C.F.R. ' 404.1527(d). Specifically, she believes that the opinions of her treating

10

physicians, Drs. Kinzey and Ellis, should require a finding that she is disabled in this case, since they "both opined that she would have great difficulty sustaining full time employment." (Plaintiff's Reply 3-4).

With respect to Dr. Kinzey, the evidence in the record consists of Exhibit B19F, a series of office treatment records dated 1/7/2009 to 1/12/2010. (R. 417-41). Plaintiff does not point to any specific portion of these records. In addition, medical records from Dr. Kinzey for the period of 3/24/2008 to 8/11/2008 are found at Exhibit B9F (R. 371-76) and a physician=s statement dated 3/10/2010 is found at Exhibit B14F (R. 391). However, the physician=s statement merely recites the fact that Plaintiff is a patient who has been treated for fibromyalgia, low back pain, lumbar radiculopathy, and rheumatoid arthritis for several years. (R. 391). Dr. Kinzey expresses the opinion that he believes that Plaintiff would have a difficult time maintaining steady employment. (R. 391). This conclusory statement is not entitled to substantial weight because it does not state the basis for that opinion or provide any reference to any type of objective tests or treatments which establish the degree of severity of the Plaintiff=s medical problems.

Dr. Ellis supplied a physician=s statement dated 2/3/2010, which describes the fact that Plaintiff has frequent upper respiratory tract infections, sinusitis, and bronchitis. The letter states that Plaintiff seems to have an infection just about once every month. That letter states: A[s]he suffers from chronic pain syndrome. Painful muscles and joints.@ (R. 392). It expresses an

11

opinion by Dr. Ellis that Plaintiff would have great difficulty maintaining a job in a competitive work environment. (R. 392). Again, this conclusory statement is not supported by reference to objective medical tests or examinations. Plaintiff has not pointed to specific statements in the medical records from The King's Daughter's Hospital and Health Services that support her claim that these treating physicians' opinions should be given great weight. There is no error in the ALJ's failure to give greater weight to the treating physicians' opinions as to disability.

## VII. Conclusion

The ALJ's decision that Plaintiff's past relevant work included work as a secretary is supported by substantial evidence. Furthermore, the inaudibility of portions of the vocational expert's testimony is not material to the issues before the court. The ALJ's credibility determination was not patently incorrect. Finally, the ALJ was not compelled to give controlling weight to the conclusory opinions of Plaintiff's treating physicians, Dr. Kinzey and Dr. Ellis. The final decision of the Commissioner is, therefore, **AFFIRMED.** Judgment consistent with this entry shall now issue.

**SO ORDERED** this 11th day of October, 2012.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Copies to:**

All ECF-registered counsel of record via e-mail.